UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL PORRAZZO,

                    Petitioner,

         -v-                              1:20-CR-285
                                          1:23-CV-354

UNITED STATES OF AMERICA,

                    Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

DANIEL PORRAZZO
Petitioner, Pro Se
11094-509
FCI Milan
P.O. Box 1000
Milan, MI 48160

HON. CARLA B. FREEDMAN          JOSHUA R. ROSENTHAL, ESQ.
United States Attorney for the  Ass't United States Attorney
    Northern District of New York
445 Broadway, Room 218
Albany, NY 12207-2924

DAVID N. HURD
United States District Judge

**DECISION & ORDER**

# I. **INTRODUCTION**

On April 17, 2023, petitioner-defendant Daniel Porrazzo ("defendant"),

acting *pro se*, moved to vacate, set aside, or correct his sentence pursuant to

28 U.S.C. § 2255.  Dkt. Nos. 57, 59.  Because defendant asserted ineffective-

assistance claims against his former trial and appellate lawyers, respondent

United States of America (the "Government") obtained an Order from Senior

U.S. District Judge Thomas J. McAvoy finding that defendant had waived his

attorney-client privileges as to those claims.[1]  Dkt. No. 67.  Thereafter, the

Government opposed relief.  Dkt. No. 73.  Defendant replied and raised some

new arguments.  Dkt. No. 81.  The Government obtained permission to file a

sur-reply.  Dkt. No. 84.

The motion has been fully briefed and will be considered on the basis of

the submissions without oral argument.[2]

# II. **BACKGROUND**

On September 30, 2020, a grand jury returned a two-count indictment

that charged defendant with possessing child pornography.  Dkt. No. 1.  The

---

[1]  This was Judge McAvoy's criminal case.  He presided over pre-trial matters, took defendant's plea, and pronounced his sentence.  The matter was recently reassigned to this Court for a decision on the pending motions.  Dkt. No. 87.

[2]  Defendant also moved to seal certain documents, Dkt. No. 60, to disqualify the Government's counsel, Dkt. No. 69, and to strike his alias from the case caption, Dkt. No. 70.  Those motions will be discussed briefly *infra*.

charges arose from a federal search warrant executed at defendant's home in Saratoga Springs in June of 2016.  *See* Dkt. No. 23.  There, law enforcement seized two laptop computers containing a collection of child pornography that included thousands of images and videos depicting the sexual abuse of children.  Dkt. No. 35.  As relevant here, this cache of materials included a 1:51-minute-long video that defendant had secretly recorded in April 2015 that depicted two minor children[3] pillow fighting nude on a bed (the "April 2015 Video" or the "Video").  *Id.*

After his arrest, defendant retained attorney James C. Knox ("Attorney Knox") to represent him.  Dkt. No. 14.  Thereafter, Attorney Knox reviewed the Government's discovery.  Knox Decl., Dkt. No. 73-1 ¶¶ 10–12.  Notably, this included the April 2015 Video in which defendant had secretly recorded the two minor children.  *Id.* ¶ 13.  Attorney Knox believed that the April 2015 Video "was self-evidently recorded" by defendant, because he "could be heard speaking from behind the camera," and because Knox "was familiar with his voice and speech patterns" from their conversations.  Knox Decl. ¶ 14.

The Government represented to Attorney Knox that the April 2015 Video would be sufficient to charge defendant with *production* of child pornography, which carried a 15-year mandatory minimum sentence.  *Id.* ¶ 15.  Because

---

[3] Both children were members of defendant's family.  Although their identities are present in the record, the Court declines to identify them in this opinion because it is not necessary to do so.

Attorney Knox also believed "that the video constituted evidence that was legally sufficient to support a charge of production of child pornography," he consulted with his client and explained that the Government had offered a plea that avoided the 15-year mandatory minimum: defendant could plead guilty to the two-count indictment and, in exchange, the Government would agree *not* to charge defendant with a child pornography production offense based on the April 2015 Video.  Knox Decl. ¶¶ 15–23.

Attorney Knox also explained to his client that, as part of this proposed plea deal, he would be required to stipulate to, *inter alia*, the applicability of certain Guidelines sentencing provisions.  *Id*. ¶¶ 23–24.  After discussing the facts of the case and his odds at trial with Attorney Knox, defendant agreed to the plea offer.  *Id*. ¶¶ 27–31, 34–36, 42–43.

On June 23, 2021, defendant pleaded guilty, pursuant to a written plea agreement, to the two counts of possession of child pornography alleged in the indictment.  Dkt. No. 23.  Among other things, the written plea agreement contained a provision in which defendant agreed to waive his right to appeal or collaterally attack a sentence of 365 months or less.  *Id*.  Thereafter, Judge McAvoy sentenced defendant to 210 months' imprisonment and fifteen years of supervised release on March 17, 2022.  Dkt. No. 41.

On March 29, 2022, defendant filed a notice of appeal.  Dkt. No. 44.  After Judge McAvoy granted defendant leave to proceed *in forma pauperis* ("IFP")

on appeal, Dkt. No. 50, the Second Circuit assigned attorney Jamesa J. Drake ("Attorney Drake") to represent defendant on appeal. Drake Decl., Dkt. No. 73-4. After Attorney Drake reviewed the case, she "concluded that there were no non-frivolous claims to present to the Second Circuit." *Id*. ¶ 7. Attorney Drake conferred with defendant, who decided to voluntarily withdraw his direct appeal so that he could pursue ineffective-assistance claims in the district court. *Id*. ¶ 11. After the parties so stipulated, the Second Circuit issued a Mandate dismissing the appeal on October 19, 2022. Dkt. No. 56.

Defendant filed this § 2255 motion on March 20, 2023. Dkt. No. 57.

## III.  LEGAL STANDARD

Congress enacted § 2255 in 1948 to alleviate a practical problem: federal courts in certain judicial districts were getting swamped with habeas corpus petitions. *United States v. Hayman*, 342 U.S. 205, 213–14 (1952). This was something of a self-inflicted judicial injury. The Supreme Court had been aggressively expanding the habeas corpus remedy, which meant that a growing number of prisoners were filing post-conviction petitions. *Id.*

Because the traditional writ of habeas corpus acts against the prisoner's warden, federal courts in the small number of judicial districts where federal prisons were located soon became overwhelmed. *Hayman*, 342 U.S. at 214 & n.18. So Congress created a broad, habeas-type statutory remedy that would spread out this seemingly ever-growing workload by returning jurisdiction

over challenges to federal convictions to the sentencing court. *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

Section 2255 provides that a "prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." But the statute does not operate as a substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). Indeed, the kind of legal or factual errors that might warrant relief on a direct appeal are ordinarily not sufficient to justify collateral relief under § 2255. *Addonizio*, 442 U.S. at 184.

Instead, the statute strikes a balance between the value of error-correction and the need for finality in criminal cases. *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995). Thus, § 2255 relief is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A sentencing court presented with a § 2255 motion must follow the Rules Governing § 2255 Proceedings for the United States District Courts. Under those Rules, the court can decide meritless claims on the basis of the papers, with or without a response from the Government. Rule 4(b); Rule 7(a). If a claim requires factual development, the court can order discovery or expand

the paper record.  Rule 6; Rule 7.  Thereafter, the court is expected to hold an

evidentiary hearing "unless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief."  § 2255(b).  As the

Second Circuit has explained:

> The procedure for determining whether a hearing is
> necessary is in part analogous to, but in part different
> from, a summary judgment proceeding. The
> petitioner's motion sets forth his or her legal and
> factual claims, accompanied by relevant exhibits: e.g.,
> an affidavit from the petitioner or others asserting
> relevant facts within their personal knowledge and/or
> identifying other sources of relevant evidence. The
> district court reviews those materials and relevant
> portions of the record in the underlying criminal
> proceeding. The court then determines whether,
> viewing the evidentiary proffers, where credible, and
> record in the light most favorable to the petition, the
> petitioner, who has the burden, may be able to
> establish at a hearing a prima facie case for relief. If
> material facts are in dispute, a hearing should usually
> be held, and relevant findings of fact made.

*Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (cleaned up).

Where, as here, a party proceeds without the benefit of an attorney, his

submissions must be liberally construed in his favor and read "to raise the

strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original); *Erickson v. Pardus*,

551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.").

However, a § 2255 petitioner still bears the burden of proving his claim by

a preponderance of the evidence.  *Triana v. United States*, 205 F.3d 36, 40 (2d

Cir. 2000).  "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."  *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987).  Nor is a reviewing court required to credit factual assertions that are "contradicted by the record in the underlying proceeding."  *Puglisi*, 586 F.3d at 214.

## IV. <u>DISCUSSION</u>

Defendant has filed two § 2255 petitions.  Dkt. Nos. 57, 59.  But because defendant has referred to the second filing as his "amended" § 2255 motion, the Court will focus its analysis to that motion.  There, defendant asserts <u>ten</u> purportedly distinct grounds for habeas relief.  Dkt. No. 59 ("Motion").

*First*, defendant contends that Judge McAvoy made "multiple prejudicial clear errors" during the sentencing (in Ground Seven).  Motion at 7.[4]

*Second*, defendant contends that Attorney Knox: (a) made certain errors during plea negotiations (in Grounds Three and Four); (b) rendered deficient advice that invalidated defendant's guilty plea (in Ground One); and (c) failed to object to certain prosecutorial misconduct or correct other errors made at his sentencing (in Grounds Five, Six, Eight, and Nine).  Motion at 5–7.

*Third*, defendant contends that Attorney Drake: (a) failed to recognize that there were several non-frivolous issues for direct appeal (in Grounds

---

[4] Pagination corresponds to CM/ECF.

Two and Eight); and, relatedly, (b) failed to file a so-called *Anders* brief (in Ground Ten).  Motion at 5, 7–8.

### 1. **Judge McAvoy's Sentencing**

*First*, defendant contends that Judge McAvoy made "multiple prejudicial clear errors" during sentencing (in Ground Seven).  According to defendant, Judge McAvoy: (a) failed to establish a factual basis for applying Guidelines sentencing provision § 2G2.2(c)(1); (b) failed to address the child victim in the audience; (c) attributed "much more severe conduct to defendant" than was warranted; and (d) began to impose sentence before permitting defendant to speak.  Motion at 7.

Upon review, these arguments must be rejected because they are barred by defendant's written plea agreement.  There, defendant waived his right to appeal or collaterally attack his conviction and any term of imprisonment of 365 months or less.  Dkt. No. 23 at 9 ¶ 7.

Although "[t]here is a presumption against the waiver of fundamental rights," *United States v. Chua*, 349 F. Supp. 3d 214, 218 (E.D.N.Y. 2018), the Second Circuit has held that "[a] defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable," *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016).

Exceptions to this general rule include circumstances "such as (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when

the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the [ ] sentence, thus amounting to an abdication of the judicial responsibility subject to mandamus." *Sanford*, 841 F.3d at 580 (cleaned up).

None of these exceptions apply in this case. A review of the transcript of the change-of-plea hearing before Judge McAvoy, Dkt. No. 52, confirms that defendant's plea was voluntary, knowing, and intelligent, and was done with a sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

Indeed, at the change-of-plea hearing, defendant stated under oath that he was satisfied with Attorney Knox, that he understood the nature of the charges against him, that he was pleading guilty of his own free will, that he engaged in the conduct alleged in the two-count indictment, and that he understood that he was giving up his right to a trial. Dkt. No. 52.

Notably, defendant also stated under oath that he had read, understood, and signed the plea agreement with the Government, that he had done so of his own free will, and that he understood that paragraph seven of the plea agreement included a waiver of his right to appeal or collaterally attack his conviction under a broad set of circumstances:

> THE COURT: Mr. Porrazzo, in your plea agreement, on pages 9 and 10, at paragraph 7, you've indicated to the Court, after you talked to Mr. Knox, that you were going to give up or waive certain appeal rights in this case and they are as follows:
>
> [reading the individual rights being waived]
>
> So, did ya understand what you were doing when you agreed to give up those appeal rights?
>
> THE DEFENDANT: Yes, sir.

Dkt. No. 52.

In short, the record conclusively demonstrates that defendant knowingly and voluntarily entered into the plea agreement (generally) and assented to the waiver of appeal or collateral attack rights (specifically). As discussed in more detail *infra*, defendant has not offered any plausible reason to conclude that his guilty plea was otherwise involuntary or invalid. Nor has defendant plausibly alleged any other reason to set aside this waiver of his rights to pursue collateral relief. Accordingly, the waiver provision in the written plea agreement bars defendant's § 2255 claims, except those framed in terms of ineffective-assistance, as discussed below in parts IV.2 and IV.3.

However, even assuming that this waiver did not bar defendant's § 2255 claims related to Judge McAvoy's sentencing proceeding, all of these claims are still completely meritless for the reasons discussed below.

### a. **Factual Basis for Guidelines Provision**

Defendant argues that Judge McAvoy failed to establish a factual basis for applying U.S.S.G. § 2G2.2(c)(1). But at sentencing, Judge McAvoy adopted the factual information set forth in the Pre-sentence Investigation Report ("PSIR"). As discussed in detail *infra*, the factual findings in the PSIR amply support the application of this Guidelines provision. *See* Dkt. No. 35. Courts routinely conclude that a sentencing judge can adopt well-supported findings in a PSIR to justify the application of a sentencing provision. *See, e.g.*, *United states v. Watkins*, 667 F.3d 254, 265–66 (2d Cir. 2012) ("A district court that adopts the factual findings of a defendant's [PSIR] is not required explicitly to provide any further analysis."). Accordingly, this argument will be rejected.

### b. **Failure to Address a Victim**

Next, defendant argues that Judge McAvoy failed to address a child victim who attended the sentencing hearing. According to defendant, Judge McAvoy should have given this victim an opportunity to speak. This argument is also totally meritless.[5] First, the victim in question submitted a letter to the court in advance of sentencing. Dkt. No. 40. Second, at sentencing, Attorney Knox

---

[5] Further, as the Government points out, defendant does not have standing to pursue an alleged violation of the victim's rights, whether under the Crime Victims' Right Act or any other statute.

brought the victim's presence to Judge McAvoy's attention, who noted on the record that he had read the letter that this victim had written. Dkt. No. 54.

The case on which defendant relies to claim that this approach amounted to reversible error, *United States v. Yamashiro*, 788 F.3d 1231 (9th Cir. 2015), did not vacate the defendant's conviction because a victim was not permitted to speak at sentencing. Instead, the *Yamashiro* panel concluded that a re-sentencing was warranted because the defendant did not have his <u>attorney</u> present when the victim addressed the court. *Id*. at 1235. The fact pattern presented here is clearly distinguishable from *Yamashiro*: the record makes plain that Attorney Knox was present for the sentencing. Accordingly, this argument will be rejected.

### c. **Attribution of Severe Conduct**

Defendant goes on to argue that Judge McAvoy attributed to him "much more severe conduct" than was warranted. This argument, too, is completely meritless. At sentencing, Judge McAvoy stated that:

> And you're fine expect for one problem, and that one problem is horrendous. I mean it's unbelievable to me. I've been doing this since 1986. I've seen a lot of cases involving child molestation and child porn and the like, and I think yours, in terms of the amount of young people that you interacted with and the way that that occurred, is probably among the worst that I've seen.

Dkt. No. 54. According to defendant:

> Porrazzo in no way intends to downplay or minimize his conduct, which he indeed understands and concedes was horrendous. And he fully understands that each child image is a victim. Yet, the apparent mismatch between the Court's words and Porrazzo's conduct warrants a closer examination. Could this truly be "among the worst" cases of "child molestation and child porn" that the Court has seen in 36 years?

Motion at 33.

This is not grounds for § 2255 relief. As the Government correctly notes, a review of the transcript of the sentencing hearing shows that Judge McAvoy knew exactly who was before him—he referenced defendant's childhood abuse as described in the PSIR, observed that defendant had possessed over "2,600 images and over 40 videos of child pornography," remarked that this cache "included depictions of infants and toddlers [and] sadistic and masochistic conduct," and pointed out that defendant created the April 2015 Video of the two minor children, too. Dkt. No. 54. Ultimately, Judge McAvoy imposed a sentence at the bottom end of the applicable Guidelines range. Accordingly, this argument will be rejected.

### d. **Defendant's Allocution**

Finally, defendant argues that Judge McAvoy erred because he "began to pronounce [his] sentence before allowing the defendant to speak." Dkt. No. 59 at 35. This argument is meritless, too. A review of the transcript shows that defendant was permitted a meaningful opportunity to speak:

MR. BARNETT:   Your Honor, I'm not sure.  Did [defendant] want to speak before Your Honor - -

THE COURT:   I can't hear you.

MR. BARNETT:   I'm not sure.  Did the defendant want to speak?

THE COURT:   I thought I'd asked him to speak.  Go ahead.  Thank you.

MR. BARNETT:   I wanted to make sure.

THE COURT:   Mr. Porrazzo.

MR. KNOX:   He does want to speak.

THE COURT:   I'd like to hear it.  Please take your mask down.  I can hear you better.

THE DEFENDANT: Your Honor, I would like to thank you for giving me the time to speak.  I want to tell you that as far as the victims, that I am truly sorry.  I am truly sorry for what I have done years ago.  I am ashamed of it, and I honestly feel regret towards the victims after reading the impact statements.  I feel deep down inside very remorseful and am ashamed of myself for what I've done.  I also feel deep regret and shame for putting my family through all the pain and suffering I have caused them.

Your Honor, I ask that you and the courts and victims and my family to please forgive me, that I am very sorry for what have led me here today.  Your Honor, I pray to God that you and the courts give me the chance to go home and continue to be the father that my father never was to me and for my child's sake and give her the only chance she will ever have to have her father in her life and to continue giving her mother

the support I've always given her to raise her daughter right.

THE COURT: All right. Well, thank you very much, Mr. Porrazzo. The Court doesn't have the power to forgive or withhold forgiveness. All I can do is look at the facts, look at your life, your history, what you've been doing right up until now, and impose a sentence hopefully that's reasonable and fair under the circumstances.

Dkt. No. 54. In sum, defendant's arguments about Judge McAvoy's conduct at sentencing are barred by the valid waiver in his written plea agreement and, to the extent they are not barred, are entirely meritless.[6]  Accordingly, these arguments will be rejected.

## 2. **Attorney Knox's Performance**

*Second*, defendant contends that Attorney Knox: (a) made certain errors during plea negotiations (in Grounds Three and Four); (b) rendered deficient advice that invalidated defendant's guilty plea (in Ground One); and (c) failed to object to prosecutorial misconduct or correct certain other errors made at sentencing (in Grounds Five, Six, Eight, and Nine). Motion at 5–7.

Technically, the waiver provision in defendant's plea agreement carved out his right to raise these claims. Dkt. No. 23 at 9 ¶ 7 (preserving his right

---

[6] The Government has identified an additional argument; *i.e.*, U.S.S.G. § 2G2.2(c)(1)'s cross-reference was unconstitutionally applied to him. Dkt. No. 59 at 42–44. That argument is rejected for the reasons set forth in the Government's brief. Dkt. No. 73 at 30–31. Because the Guidelines are now merely advisory in nature, the application of a provision that does not increase the statutory maximum or minimum cannot support a claim of constitutional magnitude that would justify habeas relief.

to "raise a claim based on alleged ineffective assistance of counsel"). But in the world of habeas, the words "ineffective assistance" often serve "merely as the ticket of admission to section 2255 proceedings." *Davis v. United States*, 2010 WL 3036984, at *1 (E.D.N.Y. July 30, 2010) (observing a petitioner's "real claims" are often "shoehorned into the idiom of ineffectiveness").

In other words, a defendant who seeks to assert substantive challenges to the validity of the prosecution against him—something almost always better off done through a direct appeal—will often frame his complaints as attorney-deficiency grievances to render them cognizable in the § 2255 context. *United States v. Williams*, 448 F. App'x 156 (2d Cir. 2012) (summary order) (rejecting on direct appeal the defendant's attempt to "do an end-run around his plea agreements on the ground of ineffective assistance").

That appears to be the case here: defendant has "dressed up" challenges to the validity of his sentence as Sixth Amendment claims attacking the quality of Attorney Knox's legal representation. Courts in this circuit routinely deny habeas relief on this basis. *See, e.g.*, *United States v. Marte*, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011) (rejecting habeas petitioner's ineffective-assistance claim that "appears to be a backdoor attempt to attack his sentence").

Even so, in light of the waiver's explicit carveout for ineffective-assistance claims and keeping in mind defendant's *pro se* status, the Court will analyze defendant's various § 2255 claims against Attorney Knox and Attorney Drake

through the Sixth Amendment lens of *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance from his attorney. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). To prove ineffective assistance, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

Under the first prong of *Strickland*, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. To overcome this presumption, the petitioner bears the burden of showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Under the second prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 693–94. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### a. **Plea Bargaining**

Defendant argues that Attorney Knox: (a) made certain errors during plea negotiations (in Grounds Three and Four). In particular, defendant argues that Attorney Knox incorrectly advised him that two Sentencing Guidelines provisions applied to his case: U.S.S.G. § 2G2.2(c)(1) and § 2G2.1(d)(1).

The Sixth Amendment right to effective assistance of counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "To provide constitutionally adequate representation during plea negotiations, a lawyer must generally advise the client of any offer that the government extends, outline the strengths and weaknesses of the case against him, and provide an estimate of the defendant's sentencing exposure at trial." *Siraj v. United States*, 999 F. Supp. 2d 357, 370 (E.D.N.Y. 2013) (cleaned up).

Upon review, defendant's challenges to the adequacy of Attorney Knox's advice during plea negotiations are completely meritless. In the written plea agreement, the parties stipulated to the applicability of U.S.S.G. § 2G2.2(c)(1) and § 2G2.1(d)(1) because the April 2015 Video that defendant had secretly recorded depicting two minor children clearly warranted the application of these Guidelines provisions.

### i. **Section 2G2.2(c)(1)**

Section 2G2.2(c)(1) is a "cross-reference" provision. The Application Notes instruct that this cross-reference "is to be construed broadly and includes all

instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]"  U.S.S.G. § 2G2.2(c)(1) App. N. 7(A).

Although this cross-reference provision ordinarily does not apply to the mere *possession* of child pornography, it instructs that U.S.S.G. § 2G2.1, a separate provision applicable to child pornography *production* should be applied "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct."

In turn, U.S.S.G. § 2G2.1 defines "sexually explicit conduct" to have the meaning set forth in 18 U.S.C. § 2256(2).  As relevant here, § 2256(2)(A)(v) includes the "lascivious exhibition of the anus, genitals, or pubic area of any person."  Because that term is not defined by the statute, the Second Circuit applies a six-factor test (often called the "*Dost* factors") to determine whether a recording depicts an unlawful "lascivious exhibition":

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

(2) whether the setting of the visual depiction is sexually suggestive; i.e., in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Rivera*, 546 F.3d 245, 249 (2d Cir. 2008) (quoting *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986))

Upon review, defendant has not identified a plausible claim of ineffective assistance based on Attorney Knox's advice vis-à-vis the applicability of this Guidelines provision. To the contrary, the available record is clear that the parties reasonably stipulated to the applicability of this provision because the April 2015 Video almost certainly qualified as child pornography under the relevant law. Attorney Knox reviewed the April 2015 Video and reached this conclusion. Knox Decl. ¶¶ 17–19. The U.S. Probation Office reviewed the April 2015 Video and likewise concluded that it "meets the legal definition of child pornography." PSIR ¶ 29.

A review of the record confirms that Attorney Knox's advice on this issue was well-grounded in the facts and law.  After all, the Second Circuit has "concluded that a secret recording of children's genitalia and pubic areas . . . can be considered lascivious and, therefore, can constitute 'sexually explicit conduct'" within the scope of the relevant criminal statutes.  *United States v. Close*, 2022 WL 17086495, at *2 (2d Cir. Nov. 21, 2022) (quoting *United States v. Spoor*, 904 F.3d 141, 149–51 (2d Cir. 2018)).

Defendant goes on to argue that he did not produce the April 2015 Video for the "purpose" of creating child pornography and claims he did not "cause" the sexually explicit conduct he secretly recorded.  Motion at 22–24.  These arguments would also fail in light of the Second Circuit's expansive precedent in this area of law.[7]  But perhaps just as importantly, these arguments do not go to the constitutional adequacy of Attorney Knox's legal advice during the plea negotiations.  Accordingly, this argument will be rejected.

### ii. <u>Section 2G2.1(d)(1)</u>

The same conclusion is appropriate with respect to U.S.S.G. § 2G2.1(d)(1), which applies when "the offense involved the exploitation of more than one minor."  According to defendant, Attorney Knox should have advised him that this provision did not apply to the April 2015 Video because only one child's

---

[7] Here and elsewhere, defendant argues that the *Dost* factors are flawed.  While it is true that other circuits have limited their reach, the Second Circuit has not.  *Close*, 2022 WL 17086495, at *2 n.2 (recognizing extra-circuit authority but declining to conclude otherwise).

genitals were exhibited in a lascivious manner. *See, e.g.*, Motion at 26. But this argument is totally meritless: the available record makes clear that both minor children were subjects in the April 2015 Video. *See, e.g.*, PSIR ¶ 29; Knox Decl. ¶ 24. It was therefore perfectly reasonable for Attorney Knox to advise defendant that this stipulation was appropriate. Accordingly, this argument will also be rejected.

**b. Change of Plea**

Next, defendant argues that Attorney Knox: (b) rendered deficient advice that invalidated his guilty plea (in Ground One). Motion at 28–29. According to defendant, Attorney Knox failed to advise him of the precise effect that the stipulations would have on his sentencing exposure. *Id*.

Where, as here, a defendant claims that his counsel has misled him as to the possible sentence that might result from a plea of guilty, the *Strickland* prejudice question is "whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013) (quoting *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005)). As the Second Circuit has explained:

> Factors to be considered by the district court in determining whether a defendant would have decided not to plead guilty and insisted instead on going to trial include (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims

> to have relied might be incorrect, (b) whether pleading
> guilty gained him a benefit in the form of more lenient
> sentencing, (c) whether the defendant advanced any
> basis for doubting the strength of the government's
> case against him, and (d) whether the government
> would have been free to prosecute the defendant on
> counts in addition to those on which he pleaded guilty.

*Chhabra*, 720 F.3d at 408.

Upon review, this argument will be rejected because it does not amount to the kind of plausible claim for ineffective assistance that might warrant any further proceedings on an expanded record.  As discussed at length *supra*, it was reasonable for Attorney Knox to advise his client that these sentencing stipulations were applicable.

Likewise, as explained *supra*, the record of the change-of-plea hearing confirms that defendant knowingly, voluntarily, and competently entered a plea after being correctly advised of his likely sentencing exposure: initially 292 to 365 months, but 210 to 265 months after accounting for acceptance of responsibility.  Dkt. No. 52.  Judge McAvoy later sentenced defendant to the very bottom of that range: 210 months.

In short, defendant gained enormous benefit from this plea.  There was no reason to doubt the strength of the Government's case against him on either of the possession counts, and if negotiations had fallen apart the Government would have added additional charges—likely a child pornography production offense, which carried a 15-year mandatory minimum—based on the April

2015 Video.  *See Chhabra*, 720 F.3d at 408.  Accordingly, this argument will be rejected.

**c. <u>Sentencing</u>**

Finally, defendant argues that Attorney Knox: (c) failed to object to certain prosecutorial misconduct and other errors made at sentencing (in Grounds Five, Six, Eight, and Nine).  According to defendant, Attorney Knox failed to prompt Judge McAvoy to address the victim at sentencing.  Dkt. No. 59 at 6.

This argument will be rejected for substantially the same reasons set forth *supra*: the victim submitted a letter that Judge McAvoy stated on the record that he had considered.  Attorney Knox correctly advised defendant that he did not have any right, constitutional or otherwise, to call witnesses at his sentencing or to require his victims to speak.  Knox Decl. ¶ 57.  Indeed, as Attorney Knox points out, to have advised otherwise would have run the risk of Judge McAvoy thinking that defendant was seeking an opportunity to re-victimize the child.  *Id.* ¶ 58.  Accordingly, this argument will be rejected.

Defendant goes on to argue that the Government engaged in prosecutorial misconduct when the assigned Assistant U.S. Attorney mischaracterized the precise description of the April 2015 Video.  Motion at 36–38.  According to defendant, certain features of the Video render it "mere nudity" rather than "child pornography."  *Id.*

In the plea agreement, defendant admitted to the following description of

the April 2015 Video:

> A 1:51 minute video (the "Video") of "Child-1" and
> "Child-2," minor female children known to the
> defendant, that was shot by the defendant on or about
> April 3, 2015 at the defendant's home using the
> iPhone. At the time the Video was made, both Child-
> 1 and Child-2 were under 10 years of age. The
> following occurs in the Video. Child-1 is nude while
> Child-2 is nude but partially covering herself with a
> towel. Child-1 and Child-2 go to a bedroom where they
> pillow fight on a bed. Child-1 asks the defendant
> whether he is filming Child-1 and Child-2 with the
> iPhone, to which the defendant responds that he is not
> filming the children with his iPhone but instead
> texting. <u>The defendant then says "Sexy" while</u>
> <u>shooting the Video.</u> Towards the end of the Video,
> Child-2, who is playing on a bed, unwraps her towel in
> a way that her pubic area is completely exposed. The
> defendant centered the iPhone's camera on her pubic
> area when this happened.

Dkt. No. 23 at 6 ¶ 5(c)(3) (emphasis added). Defendant points to other spots

in the record where the assigned Assistant U.S. Attorney ("AUSA") described

this Video, such as at defendant's initial appearance on the indictment. In

defendant's view, the AUSA failed to fully describe the Video at these court

hearings and unfairly emphasized certain facts, such as whether and to what

extent defendant's camera focused on one of the victim's pubic areas.

These arguments are meritless. There is no rule that says the Government

must fully and accurately describe every salient feature of a 1:51-minute-long

video every time the matter comes up on the record, whether that is in grand

jury, at an initial appearance, or anywhere else.  Nor is there any rule that says an AUSA cannot "fixate" on certain descriptive language that bears on criminal culpability during the prosecution.  *See, e.g.*, Motion at 37.

To the contrary, the available record indicates that the AUSA repeatedly represented an accurate description of the April 2015 Video.  The record also indicates Attorney Knox provided defendant with perfectly reasonable legal representation in connection with this issue: he successfully negotiated with the Government and with the U.S. Probation Office to modify the descriptive language contained in the parties' draft agreements.  Knox Decl. ¶¶ 44 –48, 54–56.  That is exactly what constitutionally adequate legal representation looks like.  Further, because Attorney Knox was able to negotiate language that fully and accurately described the April 2015 Video, there is absolutely no basis on which to argue that Attorney Knox somehow failed to object to alleged Government misconduct on this issue.

Defendant's arguments about the April 2015 Video boil to down a series of technicalities: he claims the Video cannot meet the legal definition of child pornography because  "there is no evidence in the record (or otherwise) that [he] took this video for the purpose of creating pornography."  Motion at 23 (emphasis in original).  As defendant explains, he didn't zoom in on one of the victim's genitals and, at least in his view, the two minor children are not the "focal point" of the Video.  According to defendant, he just "made the video of

play at the spur-of-the-moment for the purpose of making a video of the children playing." *Id*. at 24.

These arguments do not warrant habeas relief. As the Government points out, the restrictive precedent on which defendant relies is not the law in this circuit. *See, e.g.*, Motion at 21 (citing *United States v. Heinrich*, 57 F.4th 157 (3d Cir. 2023)). Accordingly, Attorney Knox was not constitutionally deficient for failing to insist on the application of out-of-circuit precedent. *Cf. United States v. Gerow*, 349 F. App'x 625, 628 (2d Cir. 2009) (summary order).

As explained *supra*, the Second Circuit's fact-bound approach to the issue of whether something qualifies as child pornography swept in the kind of misconduct here: a defendant secretly recording children in a somewhat run-of-the-mill setting as long as the other *Dost* factors support a finding that the lascivious exhibition of the child's genitals, anus, or pubic area has occurred. *See, e.g.*, *Spoor*, 904 F.3d at 149–51. Accordingly, these arguments will also be rejected.

### 3. **Attorney Drake**

*Third*, defendant contends that Attorney Drake: (a) failed to recognize that there were non-frivolous issues for appeal (in Grounds Two and Eight); and, relatedly, (b) failed to file a so-called *Anders* brief (in Ground Ten).

Upon review, these arguments do not amount to any plausible claims of ineffective assistance that might warrant further proceedings on an expanded

record. *Strickland*'s reasonableness-and-prejudice standard applies to ineffective-assistance claims asserted against appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Where, as here, "a criminal defendant's appellate counsel determines after a thorough review of the record that no non-frivolous appellate issues exist, he or she must file a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), summarizing the record and explaining why there are no non-frivolous issues." *United States v. Gali*, 708 F. Supp. 3d 271, 282 (E.D.N.Y. 2023). "The attorney must accompany the *Anders* brief with a motion to be relieved as counsel and an affidavit stating that the attorney explained the implications of the *Anders* brief to the defendant and advised the defendant that he or she can request the assistance of other counsel or submit a response *pro se*. *Id.*

Importantly, however, the *Anders* procedure is only implicated when the defendant-appellant insists on pursuing a frivolous appeal notwithstanding his appellate counsel's advice. A properly advised defendant may still elect to withdraw what would be a frivolous direct appeal in favor of pursuing claims in the district court on collateral review.

That is exactly what happened here. In support of this claim, defendant submitted a letter in which Attorney Drake clearly and carefully explained to him that he signed a broad waiver of his appellate rights, that his complaints

about the proceedings in the trial court were meritless or barred, and that his

best chance of pursuing non-frivolous relief would be to return to the district

court and pursue a 28 U.S.C. § 2255 motion based on Attorney Knox's alleged

ineffectiveness.  Ex. I at Dkt. No. 60.

Thereafter, defendant had several telephone conversations with Attorney

Drake in which she further explained these issues and options.  Drake Decl.

¶¶ 7–8.  Ultimately, defendant decided to voluntarily withdraw his direct

appeal.  *Id*. ¶ 10.  Indeed, defendant signed and submitted a declaration to

the Second Circuit in which he averred in relevant part that:

> 3.  My appointed lawyer, Jamesa J. Drake, explained
> the process of the appeal and discussed the possible
> grounds or lack of grounds that exist to appeal my two
> convictions of possession of child pornography
> depicting prepubescent minors or minors under age
> 12, 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and my
> sentence of 210 months' prison followed by 15 years of
> supervised release. Ms. Drake has also explained that
> the effect of this request for voluntary dismissal of my
> appeal will be that the Court of Appeals will dismiss
> my appeal with prejudice, and that I will have no
> further right to appeal of the conviction and sentence
> imposed in my case.

Ex. B to Drake Decl., Dkt. No. 73-4 at 27–28.

Defendant's *post hoc*, self-serving assertions to the contrary are therefore

contradicted by the available record.  If anything, the record is clear that

Attorney Drake provided constitutionally adequate representation.  She

advised defendant—correctly—that there were no non-frivolous for a direct

appeal because the valid waiver barred most claims that might otherwise be pursued. Attorney Knox also advised defendant—again, correctly—that the Second Circuit's strong preference is to resolve ineffective-assistance claims on collateral review rather than direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003).

Based on the fact that this broad waiver provision had a narrow carveout for ineffective-assistance claims, Attorney Knox recommended—reasonably—that defendant's best strategic option would be to voluntarily withdraw his frivolous direct appeal so that defendant could pursue any § 2255 claims on collateral review. *See, e.g.*, *United States v. Brunshtein*, 545 F. Supp. 2d 357, 362 (S.D.N.Y. 2008) (explaining the *Strickland* question is whether counsel's advice to voluntarily withdraw the appeal rather than file an *Anders* brief was an objectively reasonable way to accomplish client's goals). Accordingly, these arguments will be rejected.

**4.  New Arguments Raised in Reply**

Defendant's reply filing reiterates certain arguments and raises a host of new ones. Dkt. No. 81. For instance, defendant asserts that: (1) the waiver in his written plea agreement is unenforceable; (2) Attorney Knox failed to correct certain errors at sentencing; (3) Attorney Drake failed to raise those and other claims in a direct appeal; and (4) the Government breached the plea agreement by failing to correct certain errors at sentencing.

Upon review, defendant's arguments vis-à-vis Attorney Knox, Attorney Drake, and the Government will be rejected for substantially the reasons set forth in the Government's sur-reply. Dkt. No. 84. There, the Government correctly explains that the newly raised, self-serving factual assertions are completely contradicted by the available record and, as to defendant's claims about the validity of his guilty plea, by his own sworn statements during the change-of-plea hearing. *Cf. Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) ("[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible."). Courts routinely deny habeas relief without further expanding the record under these circumstances.

Broadly construed, defendant also attempts to recharacterize his waived claims as now sounding in his "actual innocence." But this attempt must be rejected. In limited circumstances, "actual innocence" operates as a gateway that avoids other procedural barriers to habeas relief. *See, e.g.*, *McQuiggin v. Perkins*, 569 U.S. 383 (2013). But this limited exception is "demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (cleaned up). A habeas petitioner who invokes "actual innocence" must make a claim that is "both credible and compelling." *Rivas v. Fischer*, 687 F.3d 514, 517–18 (2d Cir. 2012). A claim is "credible" when supported by new evidence; a claim is "compelling" when, in light of the new evidence, no reasonable juror would find guilt beyond a reasonable doubt. *Id*.

Defendant's arguments about his "actual innocence" are neither credible nor compelling. "Actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 622 (1998). "'In the context of a noncapital case, the concept of actual innocence is easy to grasp,' because it normally means simply that the defendant did not commit the crime." *United States v. Godfrey*, 616 F. Supp. 3d 267, 274 (S.D.N.Y. 2022) (quoting *Poindexter v. Nash*, 333 F.3d 372, 381 (2d Cir. 2003)).

There is nothing in the available record that even begins to suggest that defendant is actually innocent, either of the two charges in the indictment to which he pleaded guilty or of creating the April 2015 Video (with which he was <u>not</u> charged). To the contrary, defendant's admissions at the change-of-plea hearing, including the factual basis for the charges that is set forth in the written plea agreement, amply support his conviction. Accordingly, this argument will be rejected.

### 5. **Remaining Matters**

In addition to his § 2255 motion, defendant has also moved to seal certain exhibits and documents, Dkt. No. 60, to disqualify the Government's counsel, Dkt. No. 69, and to strike his alias from the public case caption, Dkt. No. 70.

### a. **Motion to Seal**

First, defendant has moved to seal certain exhibits submitted in support of his § 2255 motion. Dkt. No. 60. As the Government explains in its response,

defendant's request is slightly overly broad because the partial redaction of certain material would likely be sufficient.  Dkt. No. 63.

Out of an abundance of caution, the Court will grant plaintiff's motion and order this material sealed because of its sensitive nature.  After all, Exhibit B is a grand jury transcript that is protected by Rule 6 of the Federal Rules of Criminal Procedure.  *Cf. United States v. Alexander*, 860 F.2d 508, 514 (2d Cir. 1988) ("The mere fact that disclosure to one person for a stated purpose may be warranted does not mean that wholesale disclosure should be permitted to the public at large.").  Likewise, Exhibits C, D, E, and F contain the names of minor victims and/or home addresses that should have been redacted in accordance with Rule 49.1 of the Federal Rules of Criminal Procedure.  While the Court would ordinarily instruct a party to re-file this latter set of materials with the appropriate redactions, defendant is *pro se* and incarcerated.  Such an Order is unlikely to be productive.  Accordingly, the motion to seal will be granted.

**b.  Motion to Disqualify**

Second, defendant has moved to disqualify the assigned AUSA from this case "due to credible allegations of misconduct and other unethical conduct" and ask the Court to "conduct an in camera review of the video evidence in question to confirm the misconduct."  Dkt. No. 69.

As a general matter, disqualification "is reserved for situations of prior representation, conflicts of interest, prosecutorial misconduct, and other unethical attorney behavior." *United States v. Stewart*, 294 F. Supp. 2d 490, 494 (S.D.N.Y. 2003). "With respect to the issue of disqualifying prosecutors, the Second Circuit has adopted a restrained approach to disqualification motions and has cautioned that where a threat of tainting the trial does not exist, the litigation should proceed, and the remedy for unethical conduct lies in the disciplinary machinery of the state and federal bar." *United States v. Nix*, 256 F. Supp. 3d 272, 281 (W.D.N.Y. 2017) (cleaned up).

Upon review, defendant's motion will be denied because it is completely meritless. A review of defendant's filing confirms that it is a further attempt to assert a technical challenge to the Government's characterizations of the April 2015 Video and, relatedly, to the Government's various statements in response to the § 2255 proceedings in this case. But as discussed *supra* in connection with the Video, and as explained in detail in the Government's opposition, Dkt. No. 73 at 35–38, the Government's conduct was entirely ethical and appropriate. Accordingly, defendant's motion will be denied.

**c.  Motion to Strike**

Third, defendant has moved to strike his alias "lickndipinu" from the case caption. Dkt. No. 70. According to defendant, the use of aliases or nicknames is disfavored unless "the nickname is truly needed to identify the defendant,

connect him with the crime, or prove some other matter of significance." *Id.* (quoting *United States v. Farmer*, 583 F.3d 131, 146 (2d Cir. 2009)).  In fact, defendant argues, "the AUSA's initial and continued use of [his] aliases raises ethical concerns." *Id.*

Upon review, this motion will also be denied.  Although defendant has correctly identified the relevant legal standard, the use of his alias was fully relevant to proving his ownership of the laptops containing child pornography and, because defendant used this alias in certain online chats, was relevant to prove defendant had a sexual interest in children.  Courts routinely deny motions to strike aliases like this one.  *See, e.g.*, *United States v. Thompson*, 141 F. Supp. 3d 188, 201 (E.D.N.Y. 2015) (denying defendant's "Love Pimpin" alias where defendant was alleged to run a prostitution ring).  Accordingly, this motion will be denied.

## V.  <u>CONCLUSION</u>

Defendant has not raised any plausible claims of ineffective-assistance that might warrant further proceedings on an expanded record.[8]  *Cf. Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (acknowledging trial court's broad discretion in handling § 2255 motions).

Therefore, it is

---

[8]  To the extent that any of defendant's arguments have been not explicitly discussed, such as his demand for an "admonishment," those arguments have been considered and deemed meritless.

ORDERED that

1.  Petitioner-defendant Daniel Porrazzo's 28 U.S.C. § 2255 motion (Dkt. No. 70) is DENIED;

2.  No Certificate of Appealability[9] shall be issued;

3.  The motion to file documents under seal (Dkt. No. 60) is GRANTED;

4.  The Government's letter responding to defendant's motion to seal (Dkt. No. 63) is GRANTED;

5.  The motion to disqualify (Dkt. No. 69) is DENIED;

6.  The motion to strike (Dkt. No. 70) is DENIED.

The Clerk of the Court is directed to terminate the pending motions and close the associated civil case opening.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  November 20, 2024
        Utica, New York.

---

[9] "A court may issue a certificate of appealability 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Gray v. United States*, 980 F.3d 264, 265 (2d Cir. 2020). "That standard is met when 'reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch v. United States*, 578 U.S. 120, 127 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).